

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. PD-0064-20

**JUAN CARLOS FLORES, Appellant**

**v.**

**THE STATE OF TEXAS**

**ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE FIFTH COURT OF APPEALS GRAYSON COUNTY**

**HERVEY, J., filed a dissenting opinion in which KEEL, J., joined.**

### DISSENTING OPINION

Because the Court, in my opinion, misapplies the *Jackson v. Virginia* legal sufficiency standard, I respectfully dissent.

The question under *Jackson* is whether, viewing the evidence in the light most favorable to the verdict, the jury could have rationally found each essential element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). In conducting this inquiry, we consider the combined and cumulative force of the admitted

evidence and any reasonable inferences that can be drawn to support the verdict. *Id.* at 319. We have cautioned reviewing courts not to focus on evidence that was not admitted at trial, to engage in a "divide and conquer" analysis, or act as a thirteenth juror. *Murray v. State*, 457 S.W.3d 446, 449 (Tex. Crim. App. 2015). Unfortunately, this case features all three.

For example, the majority laments the absence of evidence showing that Appellant was close enough to strike the clerk, but I find that reasonable minds could differ. The video seems to show Appellant lean over the counter brandishing the drill toward the clerk, who was only a foot or two away on the other side of the counter. The video is certainly sufficient to support the jury's reasonable inference that Appellant was close enough to strike or possibly bludgeon the clerk. It would defy logic to find the jury incapable of "inferring" when they in fact convicted him.[1] It seems like the issue here is less about the absence of evidence and more about the majority's focus on the drill, rather than Appellant's intent, which can be inferred from words and actions, and the actual actions of Appellant as depicted in the video.

---

[1]Based on the majority's discussion of the video, it would not be surprising to be confused about what the video actually shows. On the one hand, we're told that the video is inconclusive about whether Appellant could have reached the clerk, but on the other hand, the majority is able to tell us with near exact certitude the dimensions of the counter and how far away Appellant was. Maj. Op. at 10 n.7. The majority also says that, "During most of the interaction, his back is turned to the video camera, such that it is not possible to see exactly what he is doing with the drill while she is removing cash from the register." *Id.* at 4 n.3. Apparently, the video is too grainy to be able to draw reasonable inferences about what happened unless it supports the majority's conclusion.

The majority also faults the State for not producing evidence that the drill was functional at the time of the robbery. I'm not sure how the State can produce that kind of evidence unless it can show that Appellant activated the drill during the robbery, Appellant left the weapon at the scene with the battery attached, or he admits that it was functional. Luckily, since the clerk immediately complied, this Appellant had no need to hurt the clerk to get what he wanted. Finally, the majority claims that the State had to produce evidence that the drill could have been used to cause serious bodily injury or death since it had two plastic bags wrapped over it and a sleeve over the drill bit. Neither bag is particularly thick or would otherwise impede someone using the drill to strike or stab someone, and I note that the bags were only wrapped around the drill. I believe that a jury is fully capable of resolving whether the drill could have been used to cause serious bodily injury or death. Acting as a thirteenth juror, however, the majority claims that "Appellant's actions in covering the drill with plastic bags and placing a sleeve over the drill bit likely rendered the drill incapable of stabbing or drilling anyone." *Id.* at 9 (footnotes omitted). The majority never says what evidence it relied on to draw that conclusion or whether it was simply speculating for the sake of doing so, but speculation has no place in a *Jackson* legal-sufficiency review.

In addition to physical evidence the Court finds lacking, it also summarily dismisses the possibility that Appellant intended to use the drill to cause the clerk serious bodily injury or death. It reasons that, since Appellant was pretending he had a gun, but

he actually had a drill, he could not possibly have intended to shoot the clerk. The majority also approvingly cites Appellant's statement that he did not want to hurt the clerk as long as she put the money in the bag in less than a minute. It seems to have taken Appellant's statement that he had no intention to hurt the clerk as conclusive of his state of mind.[2] I disagree. Just because a criminal says that he does not want to hurt a victim does not mean that is true. I think the evidence supports a broader inference: Appellant was going to hurt the clerk if she did not comply. The majority tries to analogize this case to cases in which the perpetrator used a toy gun, but instead, here, Appellant used a heavy drill to commit the robbery. And while he might have wanted the clerk to believe that he had a gun, he knew that he brought a drill and that he could use it if he had to. I think a jury could have reasonably inferred that Appellant intended to use the drill, a deadly weapon, to hurt the clerk if she did not comply. The majority mentions that the clerk testified that Appellant "pointed the drill at her as though it were a gun, but he never attempted to strike or hit her with it and never threatened to do so," but the clerk also testified that she was in fear for her life when she thought it was a gun at the time of the robbery and that she still would have been in fear for her life even if she had known it was a drill. I also note that the officers testified that the drill could have been used as a deadly weapon because it could be used to cause serious bodily injury or death.

---

[2]Imagine if juries (and appellate courts) were bound to believe a defendant's assertions about his own state of mind during the commission of a crime, especially when there is evidence to the contrary. Not many defendants would be guilty except for crimes with no *mens rea* requirement, like DWI.

In dividing and conquering the evidence without considering its combined and cumulative force and any reasonable inferences that can be drawn to support verdict, then focusing on evidence not in the record and how it would have liked the State to present the case instead of how it did, I believe that the majority misapplies the *Jackson* standard for legal sufficiency. Consequently, I respectfully dissent.

Filed: March 31, 2021

Publish